Myron JOHNSON, Appellant,

v.

STATE of Indiana, Appellee.

In re Dock McDOWELL, Jr., Appellant.

No. 3–181A30.

Court of Appeals of Indiana, Third District.

Sept. 29, 1981.

Ellen S. Podgor, Nicholls & Podgor, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Dan S. LaRue, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Dock McDowell, Jr., an attorney at law, was found in direct criminal contempt of court for ignoring an order in limine issued by the Lake Superior Court during a criminal trial. On appeal, he raises over twenty issues. Since we reverse and remand to the trial court, we need only discuss the following issue:

Did the trial judge violate due process by presiding over a separate direct contempt hearing after the trial in which the alleged contemptuous incident occurred?

McDowell, as a pauper attorney for the Lake Superior Court, was assigned to defend Myron Johnson in a criminal matter. Just before the trial commenced, the State of Indiana, by a Deputy Prosecutor, filed a motion in limine. Although the actual motion in limine is not included in the record of this appeal, it appears that it concerned the "checkered career" of one of the state's witnesses and what parts of that "career" could be brought to the attention of the jury. After a discussion between the court, the state, and McDowell concerning the cross-examination of the state's witness, the court said:

"Well, your motion in limine is granted insofar as it is prohibited defense counsel from referring to anything that is not an impeachable offense, but the pendency of an action, with the exception that you may refer to his prior theft conviction as an impeachable offense and you may inquire as to whether or not he has made a deal with the State or an arrangement with the State or entered into an agreement with the State in any form or fashion, that his testimony here is in return for lenient dealings on a present or a future case, that may come up."

The alleged violation[1] of the order in limine occurred during the direct examination when McDowell asked Johnson leading questions about the state's witness. The state objected and asked for a mistrial, which was denied. Later, the state asked for a mistrial, or a continuance in the alternative and that McDowell be found in contempt of court. Judge Letsinger denied the motion for a mistrial or continuance and set the motion for contempt for a separate hearing.

After Johnson's trial, Judge Letsinger held a separate contempt hearing for McDowell. He found McDowell to be in direct civil contempt of the court and stated the sanction to be a public reprimand. He later amended the entry to include that McDowell was found in direct criminal contempt.

■ McDowell argues that Judge Letsinger should have disqualified himself, since he did not find McDowell in contempt during the trial. Due process requires that a neutral and detached magistrate preside

over the contempt proceedings after the trial has been concluded. We agree.

■ Direct contempt is any act which manifests a disrespect for and defiance of a court. *Skolnick v. State* (1979), Ind.App., 388 N.E.2d 1156, 1162–63, U.S. *cert. denied* 445 U.S. 906, 100 S.Ct. 1085, 63 L.Ed.2d 323. It must be committed in the presence of and with knowledge of the court.[2] *Id.* at 1163. If McDowell did violate the order in limine during the jury trial, his conduct could constitute direct contempt of court.[3]

■ Direct contempt of court has long been dealt with summarily, *Brennan v. State* (1961), 242 Ind. 79, 173 N.E.2d 312, 313 *quoting In re Oliver* (1948), 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682; *Leusse v. State* (1934), 206 Ind. 480, 190 N.E. 177, 178. Contempt powers are necessary to protect the orderly administration of justice and maintain the authority and dignity of the court. *Cooke v. United States* (1925), 267 U.S. 517, 539, 45 S.Ct. 390, 395, 69 L.Ed. 767. The trial court may act summarily because the immediate vindication of these interests outweighs the need for a completely neutral

---

1. We express no opinion on whether McDowell did or did not violate the court's order in limine.

2. Indirect contempt of court is an act committed outside the presence of the court which affects the proceedings of the court. *Skolnick, supra*, at 1163, footnote 3.

3. The United States Supreme Court, in *Maness v. Meyers* (1975), 419 U.S. 449, 458–60, 95 S.Ct. 584, 591–92, 42 L.Ed.2d 574, stated the following:

"We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.... The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.' *United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947). This principle is especially applicable

to orders issued during trial... Such orders must be complied with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the trial with issues collateral to the central questions in litigation. This does not mean, of course, that every ruling by a presiding judge must be accepted in silence. Counsel may object to a ruling. An objection alerts opposing counsel and the court to an issue so that the former may respond and the latter may be fully advised before ruling... But, once the court has ruled, counsel and others involved in the action must abide by the ruling and comply with the court's orders. While claims of error may be preserved in whatever way the applicable rules provide, counsel should neither engage the court in extended discussion once a ruling is made, nor advise a client not to comply. A lawyer who counsels his client not to comply with a court order during trial would, first, subject his client to contempt, and in addition, if he persisted the lawyer would be exposed to sanctions for obstructing the trial. Remedies for judicial error may be cumbersome but the injury flowing from an error generally is not irreparable, and orderly processes are imperative to the operation of the adversary system of justice." (citations and footnote omitted)

and detached magistrate to decide if a party should be held in contempt of court.[4]

After the state made its motion that McDowell be found in contempt of court, Judge Letsinger set the motion down for a hearing at the conclusion of Johnson's trial. There was no immediate need to protect the orderly administration of justice or to maintain the authority and dignity of the court. If the need had existed, Judge Letsinger could have cited McDowell for contempt. It was clearly within his power and discretion to take such action where the circumstances clearly warranted it. But, he did not.

■ Where the need to protect the orderly administration of justice or to maintain the authority and dignity of the court do not exist, due process requires that a completely neutral and detached magistrate preside at the contempt hearing. *Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532. Justice is better served because there will be neither the likelihood of bias nor the appearance of bias when the judge who accused the party of contempt disqualified himself from presiding at the contempt hearing.

Reversed.

HOFFMAN, P. J., concurs.

GARRARD, J., concurs in result.

---

**4.** " 'To allow the disruptive activities of a defendant ... to prevent his trial is to allow him to profit from his own wrong. The Constitution would protect none of us if it prevented the courts from acting to preserve the very processes that the Constitution itself prescribes.' "
*Illinois v. Allen* (1970), 397 U.S. 337, 350, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353, *reh. denied* 398 U.S. 915, 90 S.Ct. 1684, 26 L.Ed.2d 80.