In re the MARRIAGE OF Charlotte E. NEISWINGER, Petitioner,

and

Carl E. Neiswinger, Respondent,

and

The Matter of Direct CONTEMPT OF Witness Robert MEYER.

No. 1–883A248.

Court of Appeals of Indiana, First District.

Aug. 15, 1984.

Rehearing Denied Sept. 20, 1984.

J.J. Paul, III, Indianapolis, for witness/appellant.

Linley E. Pearson, Atty. Gen., Indianapolis, for appellee.

J.D. Calbert, Greencastle, for original respondent.

NEAL, Presiding Judge.

### STATEMENT OF THE CASE

Robert Meyer (Meyer) appeals from his conviction for direct criminal contempt for false testimony in the marriage dissolution hearing of Charlotte and Carl Neiswinger in the Putnam Circuit Court.

### STATEMENT OF THE FACTS

Meyer testified as a witness for Carl Neiswinger on June 17, 1983 regarding surveillance activities directed toward Charlotte. Meyer stated he took several photographs of Charlotte following the couple's separation, and testified as to the events observed at the time each photo was taken.

Charlotte called Maureen McCarty as a witness. McCarty testified she took, developed and printed each of the photographs Meyer had previously identified.

On June 22, 1983, Charlotte filed a "Petition for Findings of Contempt", requesting the trial court to hold Meyer and others in direct contempt of court for testifying falsely. On June 23rd, she filed an amended petition which specifically set out the alleged contemptuous behavior. On July 7th, without a hearing and out of Meyer's presence, the trial court issued an order finding Meyer in direct contempt of court and assigning him to the custody of the Putnam County Sheriff until such time as he purged himself. On July 18th, in Meyer's absence and without hearing, the trial court clarified its order and sentenced Meyer to 90 days in the Putnam County Jail, but eligible for work release. By order book entry on August 1st, the trial court overruled a motion to reconsider filed by Meyer on July 26, stating Meyer had falsely testified and this action constituted direct criminal contempt.

Following a stay granted by this court, Meyer filed his motion to correct errors, upon which a hearing was held. On December 5th, the trial court issued a statement recounting the testimony of Meyer it found to be contemptuous. In this statement, the trial court sustained Meyer's motion to correct errors "in part", without any indication as to which part it granted. It set the cause for hearing but denied Meyer's request for change of judge. We vacate the judgment, affirm in part and reverse in part.

### ISSUES

Meyer raises four issues for our review:

I. Whether the trial court erred in finding Meyer in direct criminal contempt without adhering to IND. CODE 34-4-7-7, and whether the court may correct such errors by filing a statement subsequent to the filing of Meyer's motion to correct errors.

II. Whether the trial court violated Meyer's due process rights by finding him guilty of direct criminal contempt and sentencing him to 90 days confinement or work relief *in abstentia*, without notice to him and without a trial or hearing.

III. Whether the trial court erred in finding Meyer in direct criminal contempt without a public trial before a neutral and detached magistrate, where the contempt charge was not made during the trial proceeding and thus was not necessary to maintain order in the court, and was in fact not made a finding of the trial court until three weeks after the alleged contempt occurred.

IV. Whether the trial court erred in finding Meyer guilty of direct criminal contempt based upon knowledge acquired from another witness's testimony.

## DISCUSSION AND DECISION

We begin by pointing out the State has confessed error, and requests this cause be remanded to the trial court for a hearing before a neutral magistrate according to the procedures set out in IND.CODE 34-4-7-8. The Attorney General's admission of error does not relieve us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required. *Myers v. State,* (1954) 233 Ind. 66, 116 N.E.2d 839.

■ Meyer attempts to convince this court that false testimony does not constitute direct criminal contempt of court. We are not convinced. Our supreme court's holding in *Young v. State,* (1926) 198 Ind. 629, 154 N.E. 478, that false swearing by a witness is an obstruction of justice constituting direct contempt, has not been overturned. Further, IND.CODE 34-4-7-2 reaffirms *Young,* stating a witness, who, while upon the witness stand, shall purposely so demean himself as to retard or disturb the court proceedings shall be deemed guilty of direct contempt. Direct contempt includes a wide variety of conduct disrespectful of and disruptive to the trial court. *See McIntire v. State,* (1967) 248 Ind. 142, 223 N.E.2d 347. Lying on the witness stand, after taking the oath, is no less of an impediment to court proceedings than refusing to testify; the administration of justice is equally hindered. The fact that the falsity of Meyer's testimony was not apparent until McCarty took the witness stand is of no consequence, all of the relevant testimony was completed "in the presence and knowledge of the court". *Brennan v. State,* (1961) 242 Ind. 79, 173 N.E.2d 312, 313. It is also of no import that no action was taken by the trial court until after the contempt was brought to its attention by Charlotte. *See Johnson v. State In re McDowell,* (1981) Ind.App., 426 N.E.2d 104. That the court chose to believe McCarty over Meyer is a valid basis for bringing a direct contempt charge. *See In re Oliver,* (1948) 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682.

■ However, the trial court's summary treatment of the contempt charge was improper. Not all conduct amounting to direct contempt warrants the imposition of punishment without due process of law. *In re Oliver, supra.* Summary action is appropriate only to maintain the authority and dignity of the courtroom, when the contemptuous act is immediately recognized and chargeable in the actor's presence. The severity of summary contempt proceedings is softened by the fact the contemnor is present and immediately apprised of his misdeed. He is entitled to answer the contempt charge or explain his actions before the trial court pronounces judgment, and the entire occurrence is thereafter reduced to writing. IND.CODE 34-4-7-7.

■ In the present case, the deceptive testimony of Meyer did not come to light while he was on the witness stand, thus, the charge of contempt was not necessary to maintain decorum in the court. Since the contempt was not discovered and filed in Meyer's presence, due process requires

that he be informed of the specific conduct on which it is based, and that he be afforded an opportunity to answer the charge and defend his behavior before judgment is imposed. *In re Oliver, supra; Garlin v. State*, (1975) 163 Ind.App. 570, 325 N.E.2d 515. The procedure set out in IND.CODE 34–4–7–8 is appropriate here, omitting the last sentence addressed to indirect contempt.

The statement filed by the court on December 5th was sufficient notice to Meyer of the charges against him, and provides an adequate report of the contemptuous testimony for our purposes. The fact this statement was not issued until Meyer's motion to correct errors had been heard does not change its usefulness. *See Skolnick v. State*, (1979) Ind.App., 388 N.E.2d 1156.

■ As the trial court ordered on December 5th, a hearing on the contempt charge set out in the court's statement must be held before Meyer may be punished. However, contrary to the trial court's ruling, this hearing must be presided over by a new judge. We note that Meyer has failed to request a change of judge at any stage of these contempt proceedings, and merely raised the absence of a newly appointed, impartial magistrate as an issue in his motion to correct errors. Although this will not suffice to preserve error on appeal, we believe due process requires the trial judge to *sua sponte* disqualify himself from presiding over a posttrial contempt hearing, where the contempt occurred in the judge's courtroom but was not recognized or brought to the contemnor's attention at that time. We do not address the courtroom scenario where contemptuous activity occurs and is acknowledged by the judge during the trial, but the hearing and judgment are postponed until a later time as a practical matter. *See generally Jacobsen v. State*, (1979) 179 Ind. App. 37, 384 N.E.2d 1041 (Judge Garrard's discussion). Nor do we deal with indirect contempt proceedings.

In making our decision, we must strike a balance between vindicating the interests of the court and the interests of the accused. *Ungar v. Sarafite*, (1964) 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921. When the trial court charged Meyer with direct contempt, it was no longer motivated by the need to preserve the respect and orderly administration of its courtroom. Without this preservation factor there was no urgency compelling the trial judge, himself to impose the contempt judgment. Absent this, due process requires the trial judge to recuse himself in order that someone other than the contemnor's accuser may conduct a hearing on the contempt charge and determine the proper punishment. *Mayberry v. Pennsylvania*, (1971) 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532. This slight delay will injure no public or private right and will foreclose even the appearance that the trial judge is acting vindictively in punishing one for direct contempt after the trial. *See Cooke v. United States*, (1925) 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767; *Johnson, supra.*

Although the need for an impartial judge is more readily apparent at a contempt hearing involving vituperative behavior directed toward the trial judge, "contemptuous conduct, though short of personal attack, may still provoke a trial judge and so embroil him in controversy that he cannot 'hold the balance nice, clear and true between the State and the accused....'" *Taylor v. Hayes*, (1974) 418 U.S. 488, 501, 94 S.Ct. 2697, 2704, 41 L.Ed.2d 897 *citing Tumey v. Ohio*, (1927) 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749. We further agree with the Supreme Court, "It is almost inevitable that any contempt of a court committed in the presence of the judge during a trial will be an offense against his dignity and authority. At a trial the court is so much the judge and the judge so much the court that the two terms are used interchangeably in countless opinions of this court and generally in the literature of the law, and contempt of the one is contempt of the other." *Sacher v. United States*, (1952) 343 U.S. 1, 12, 72 S.Ct. 451, 456, 96 L.Ed. 717. To remain detached and impartial under such circumstances would be highly difficult.

Given these observations, we can see no benefit to maintaining a trial judge as the ultimate decision maker in a direct contempt matter arising out of activity in his courtroom where the preservation factor is absent. Nor do we favor a rule which allows the trial judge to evaluate his personal involvement in the matter before resorting to recusal. *Cf. Ungar, supra; Paul v. Pleasants*, (4th Cir.1977) 551 F.2d 575 (contempt raised during trial, hearing postponed until after trial completed). By holding that a trial judge who charges one with direct contempt at a time other than that of the contemptuous act must *sua sponte* disqualify himself from presiding at the contempt hearing of the accused, "[j]ustice will be better served because there will be neither the likelihood of bias nor the appearance of bias...". *Johnson, supra*, at 107. Moreover, the due process rights of the accused to a fair and impartial trial before suffering punishment will uniformly be protected.

■ Thus we rule the proper action to be taken by a trial judge faced with a direct contempt situation not raised in open court at the time of its occurrence, is to disqualify himself from presiding over the necessary contempt hearing pursuant to Ind. Rules of Procedure, Trial Rule 79(1)(c). This rule provides that where the judge has an interest which could substantially affect the outcome of the proceeding, he shall disqualify himself and certify that fact to the Supreme Court who shall appoint a special judge. We hold that the procedure under T.R. 79(1)(c) is appropriate in a proceeding of this nature.

We direct the trial court to vacate the judgment finding Meyer guilty of contempt, disqualify himself from proceeding further in the matter, and certify these facts to the Supreme Court under T.R. 79(1)(c) for the appointment of a special judge.

Judgment reversed and remanded.

ROBERTSON and RATLIFF, JJ., concur.