James H. DAVIDSON Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 50A03–0502–CR–76.

Court of Appeals of Indiana.

Nov. 10, 2005.

June E. Bules, Plymouth, for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

James H. Davidson appeals the trial court's finding that he was in direct criminal contempt for refusing to sign the terms and conditions of his probation when a probation officer visited him in the county jail and then cursing the probation officer and the judge. Because the trial court did not have immediate and personal knowledge of Davidson's act, the trial court improperly found him to be in direct contempt. We therefore reverse and remand for indirect contempt proceedings.

### Facts and Procedural History

On February 17, 2005, Marshall County Probation Officer Steve Harner went to the Marshall County Jail to meet with Davidson to review and sign the terms and conditions of his probation.[1] When Harner mentioned to Davidson that he should have previously reviewed the probation terms and conditions with his attorney, Davidson said, "I didn't have no f* * *in' attorney" and "I'm not going to f* * *in' report to you for four ... years. This is f* * *in' bullshit." Tr. p. 103. Harner replied that they needed to review the terms and conditions and that if Davidson had any questions, he would try to answer them. Davidson again said, "I ain't ...

---

1. The record shows that Davidson was in the county jail waiting to be transported to the Department of Correction to serve a twelve-year aggregate sentence. Specifically, Davidson pled guilty to Conspiracy to Commit Arson as a Class B felony, and the trial court sentenced him to ten years with four years suspended to probation. Davidson also received a six-year consecutive sentence as a result of his probation being revoked in another cause number.

gonna sign no f* * *in' terms. I ain't got no f* * *in' attorney." *Id.* At this point, Harner told Davidson that they only needed to review the terms and conditions that applied to him, and Davidson said "I'm not f* * *in' signing. I ain't gonna abide by those terms. I'll see you in six ... years." *Id.* When Davidson started to walk away from Harner, Harner told him that he had to sign the terms and conditions before being transported to the Department of Correction to serve his sentence and that the judge was not going to like to hear about his behavior. Davidson turned around and said, "Well, f* * * you." *Id.* Davidson then mumbled something, and Harner asked him what he had said. Davidson then repeated himself, "And you can tell the Judge f* * * him, too." *Id.* The jailers then took Davidson back to his cell.

That same day, Harner reported the incident with Davidson to the trial court. The trial court scheduled a hearing for February 21, 2005.

At the hearing, Harner testified as to what transpired at the Marshall County Jail four days earlier. The trial court asked Davidson if Harner's description was accurate, and Davidson for the most part agreed. When asked to explain his behavior, Davidson simply responded that Harner had an "attitude" and was "very disrespectful." *Id.* at 104. The trial court found Davidson in direct criminal contempt and sentenced him to six months to be served consecutively to his other sentences. Davidson now appeals.

## Discussion and Decision

 Davidson contends that the trial court erred in finding him in direct criminal contempt. When reviewing a finding of contempt, we accept as true the statement entered by the trial court. *In re Nasser*, 644 N.E.2d 93, 95 (Ind.1994). Appellate courts will interfere with the judgment only where it clearly appears the acts do not constitute contemptuous acts. *Id.*

 Direct contempt includes those "actions occurring near the court, interfering with the business of the court, of which the judge has personal knowledge." *Hopping v. State*, 637 N.E.2d 1294, 1296 (Ind. 1994); *see also Nasser*, 644 N.E.2d at 95. Courts have inherent power to punish summarily acts of direct contempt without formal charges or an evidentiary hearing.[2] *Nasser*, 644 N.E.2d at 95; *see also* Ind. Code § 34–47–2–4. "The purpose of this power is to enable the court to protect itself against 'gross violations of decency and decorum.'" *Nasser*, 644 N.E.2d at 95 (quoting *Brown v. Brown*, 4 Ind. 627 (1853)). Acts of indirect contempt, on the other hand, are those that undermine the activities of the court but fail to satisfy one of the direct contempt requirements. *Hopping*, 637 N.E.2d at 1296; *Nasser*, 644 N.E.2d at 95. Generally, a person who willfully disobeys any order lawfully issued by any court of record or by the proper officer of the court is guilty of indirect contempt. Ind.Code § 34–47–3–1. Indirect contempt proceedings require appointment of a special judge[3] and an array of due process protections, including notice

---

**2.** "The power of Indiana courts to summarily punish for direct criminal contempt, while specified by statute, rests upon the common law." *Hopping*, 637 N.E.2d at 1296. Nevertheless, Indiana Code § 34–47–2–1(a) provides that any person who "disturbs the business and proceedings" of a court "by creating any noise or confusion ... in a court of record ... while the court is open for and en-

gaged in the transaction of business" is guilty of direct contempt of court.

**3.** A special judge does not have to be appointed, however, if the indirect contempt "grow[s] out of willfully resisting, hindering, delaying, or disobeying any lawful process or order of court." Ind.Code § 34–47–3–7(b).

and an opportunity to be heard. *Nasser,* 644 N.E.2d at 95; *see also* Ind.Code §§ 34–47–3–5 to –7.

This case presents a unique situation in that the alleged contemptuous act took place not in a courtroom but in a county jail. Historically, the Indiana Supreme Court has held that a party's presence in the courtroom is an element of direct contempt. *Nasser,* 644 N.E.2d at 95 (citing *State ex rel. Stanton v. Murray,* 231 Ind. 223, 108 N.E.2d 251 (1952)); *see also Hopping,* 637 N.E.2d at 1296 ("It is true that this Court has frequently employed phraseology which could be read to indicate that direct criminal contempt requires a finding of disruption of an actual court proceeding. However, while such disruption may be a sufficient condition for a finding of direct criminal contempt, it is clearly not a necessary condition.") (internal citations omitted). However, in 1958, our Supreme Court observed that direct contempt can occur within the area of the judge's knowledge, not merely within the judge's personal presence. *Nasser,* 644 N.E.2d at 95 (citing *LaGrange v. State,* 238 Ind. 689, 153 N.E.2d 593 (1958)). Our Supreme Court later explained in *Hopping* that "it is not the actual interference with a legal proceeding that is to be prevented, but the undermining of the judicial process." 637 N.E.2d at 1296–97. The court noted that "[t]his concern for the integrity of the process has supported findings of direct criminal contempt for merely making contumacious statements in a document filed with a court, even where it is not read at a hearing." *Id.* at 1297 (citation omitted). "The concern is for the integrity of the courts, not hearings or judges." *Id.* Accordingly, the court held that presence in a judicial hearing is not a necessary element of direct contempt:

> [W]here ... the court has firsthand and immediate knowledge of acts demonstrating a clear disregard for its au-

thority which threaten to undermine the integrity of the judicial process and impede the performance of court work, summary proceedings for direct criminal contempt are available. We do not seek [on review] to ascertain the presence of a formal hearing but merely that the inappropriate behavior bears a close relationship to the court's judicial activities.

*Id.* It is thus apparent that *Hopping* focuses on two inquires: (1) whether the act stands in disregard of judicial authority, thereby threatening the integrity of the court and impeding its work and (2) whether the judge possessed immediate and personal knowledge of the contemptuous act. *Nasser,* 644 N.E.2d at 96. In addressing this second inquiry, the *Nasser* court explained:

> For example, if an attorney berated a judge in front of the jurors before entering the courtroom, this would clearly disrupt the court proceedings. It would not, however, be considered direct contempt if presence in the courtroom was the determinative factor. Because knowledge is the critical issue, such an act can be summarily punished as direct contempt.

*Id.* at 96 n. 2.

The facts of *Nasser* help illustrate this point. On the Thursday before trial was set to begin on Monday, defense counsel mailed a motion to continue to the trial court. On the morning of trial, the trial court assembled the jurors, cleared the court's calendar, and made the necessary physical preparations for trial as scheduled. At 9:00 a.m., everyone was present for trial except defense counsel. All attempts at contacting defense counsel were unsuccessful, and a subpoena was issued for him. When Monday's mail arrived at 9:41 a.m., the trial court received defense

counsel's motion to continue. Defense counsel appeared in court at 10:44 a.m. that same morning and told the trial court that he did not check with the court but instead assumed that his motion to continue had been granted and that he was not prepared for trial. The trial court filed an affidavit citing defense counsel for indirect contempt but he was subsequently found to be in direct contempt.

On appeal, our Supreme Court concluded that defense counsel was properly punished for direct contempt because he possessed considerable advance notice of his client's trial but made little effort to be present. *Id.* at 96. Because defense counsel's contemptuous act was not being present in the courtroom, the court held that the "trial judge obtained personal knowledge of the contemptuous act, critical to a finding of direct contempt, when Nasser appeared in court and provided an insufficient explanation for his absence." *Id.* The court also acknowledged that defense counsel "purposefully disregarded the court's authority and obstructed its productivity." *Id.*

 Here, in determining whether the trial court properly found Davidson to be in direct criminal contempt, we must focus on the two inquiries set forth in *Nasser:* (1) whether the act stands in disregard of judicial authority, thereby threatening the integrity of the court and impeding its work and (2) whether the judge possessed immediate and personal knowledge of the contemptuous act. *Id.* As for the first inquiry, we note that the trial court sentenced Davidson to a term of incarceration followed by probation. The trial court instructed the probation department to meet with Davidson, review the terms and conditions of his probation, and have Davidson sign them. When Harner went to the Marshall County Jail to accomplish this, Davidson refused to sign the terms and conditions of his probation, cussed at Harner, and then cursed the trial court judge, an act that was witnessed by other people. Davidson's act of refusing to sign the terms and conditions of his probation and cursing the probation officer and trial court judge stands in disregard of judicial authority and threatens the integrity of the court. It also impeded the probation officer's work.[4] We now proceed to the more difficult inquiry of whether the trial court judge possessed immediate and personal knowledge of Davidson's act.

 We first note that if Davidson's act had occurred in the courtroom or even outside the courtroom with the trial court judge nearby, this question would be easy to answer. Instead, we are faced with an act that occurred in the county jail and was not detailed to the trial court until several days later. Specifically, Harner reported the incident with Davidson to the trial court on February 17, 2005, the same day that it occurred.[5] However, the trial court did not schedule a hearing until Feb-

---

**4.** Indiana Code § 11–13–1–1(c) provides: "Probation officers shall serve at the pleasure of the appointing court and are directly responsible to and subject to the orders of the court."

**5.** It is unclear from the record whether Harner specifically described the details to the trial court or generally reported that problems had been encountered. The CCS entry for February 17, 2005, provides:

Steve Harner, Marshall County Probation Officer, reports that in reviewing probation terms with the defendant problems were encountered. Hearing to resolve those problems scheduled for Monday, February 21, 2005[,] at 10:00 a.m.

Appellant's App. p. 7. This is not dispositive because even if Harner reported the specific details to the trial court judge on February 17, 2005, this would not constitute "personal knowledge."

ruary 21, 2005. At the hearing, Harner described the incident to the trial court judge, and Davidson agreed with Harner's description. At that point, the trial court judge obtained personal knowledge of Davidson's act. *See id.* at 96 (concluding that although the contemptuous act occurred outside the courtroom, the trial court judge obtained personal knowledge of it when defense counsel was subpoenaed to the courtroom and explained why he did not appear for trial). Because knowledge is the critical issue, it is not dispositive that Davidson's act occurred in the county jail and not in the courtroom.[6] *See id.* at 96 n. 2. Importantly, however, the trial court judge's personal knowledge of the incident was not immediate; it came four days later.

"Our supreme court has explained that such summary procedures are necess[ary] because of the *immediate* threat to the integrity of the court from direct contempt." *In re Guardianship of C.M.W.,* 755 N.E.2d 644, 650 (Ind.Ct.App.2001) (emphasis added); *see also Hopping,* 637 N.E.2d at 1297 (requiring trial court to have "firsthand and *immediate* knowledge" of the contemptuous act) (emphasis added). The point of summary proceedings, which dispense with due process, is that there is not enough time to allow for notice and opportunity to be heard because of the present threat to the trial court's integrity. In fact, in both *Hopping* and *Nasser,* the trial courts obtained personal knowledge of the contemptuous acts on the days that they occurred. Here, however, several days passed before the trial court judge obtained personal knowledge of

Davidson's act. At that point, the threat to the integrity of the trial court was no longer immediate. Because there was no immediate threat, Davidson's act did not warrant dispensation of the due process rights afforded to those accused of indirect contempt. Accordingly, the trial court erred in finding Davidson to be in direct criminal contempt.

Nevertheless, the State argues that even if we conclude that the trial court erroneously found Davidson to be in direct contempt, we should find him to be in indirect contempt. However, Indiana Code § 34–47–3–5 provides in pertinent part:

(a) In all cases of indirect contempts, the person charged with indirect contempt is entitled:

 (1) before answering the charge; or

 (2) being punished for the contempt;

to be served with a rule of the court against which the contempt was alleged to have been committed.

(b) The rule to show cause must:

 (1) clearly and distinctly set forth the facts that are alleged to constitute the contempt;

 (2) specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and

 (3) specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.

---

**6.** In *Srivastava v. Indianapolis Hebrew Congregation, Inc.,* 779 N.E.2d 52 (Ind.Ct.App. 2002), *trans. denied,* another panel of this Court held that because the contemptuous act did not occur in "open court," there was no direct contempt. *Id.* at 60. In reaching this conclusion, the court relied on a 1990 Indiana Court of Appeals case, *In re Craig,* 552 N.E.2d 53, 55 (Ind.Ct.App.1990). However, our Supreme Court made clear in the 1994 cases of *Hopping* and *Nasser* that the contemptuous act does not have to occur in open court.

There is no evidence in the record that Davidson was served with a rule of the court clearly and distinctly setting forth the facts that are alleged to constitute the contempt. Even the State agrees to this. *See* Appellee's Br. p. 9 ("In this case, although there is no indication in the record the type of notice Defendant was given to appear at the contempt hearing . . . ."). We therefore remand this case to the trial court for indirect contempt proceedings conducted pursuant to Indiana Code chapter 34–47–3. For purposes of remand, we note that because this case "grow[s] out of willfully resisting, hindering, delaying, or disobeying any lawful process or order of court," a special judge does not have to be appointed. *See* I.C. § 34–37–3–7(b), (d).

Reversed and remanded.

SULLIVAN, J., and FRIEDLANDER, J., concur.