**Michael A. SMITH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0710–CR–861.

Court of Appeals of Indiana.

Sept. 29, 2008.

---

Anna E. Onaitis, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Marjorie Lawyer–Smith, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Michael A. Smith appeals the trial court's order finding him in direct contempt of court. Smith argues that his due process rights were violated

because the trial court did not appoint a neutral judge to preside over the hearing at which Smith was sanctioned for his behavior and that the trial court erroneously found his actions to be directly contemptuous. Finding no error, we affirm.

## FACTS

On August 29, 2007, the Honorable Patricia J. Gifford commenced a pretrial hearing on charges pending against Smith. The hearing was continued until the following day. During the August 30, 2007, hearing, which was conducted by Master Commissioner Steven J. Rubick, the following colloquy occurred:

> The Court: State your full name please.
>
> Defendant: My full name—I thought I was the person that was charged here. I was just here yesterday. All of the information I gave them they let the State amend it to try to put it on me but here again it's Michael A. Smith.
>
> The Court: We will show that the defendant is non-responsive today. The initial hearing will be continued until Tuesday 9 A.M. We'll see if Mr. Smith's attitude improves between now and then.
>
> Defendant: Well I won't be here Tuesday so you might as well just send me back to Indiana Department of Correction, sir—and you have a good f*ckin['] day.
>
> The Court: All right. Mr. Smith, you can come right back here and be found in direct contempt for that little outburst.
>
> Defendant: Do you need me to say it again [be]cause I won't be here Tuesday if you have to drag me out of bed and bring me over here.
>
> The Court: We will show that at this point Mr. Smith has uttered profanity to the bench in open court in the presence of my officers, my staff and the people who are here to watch the proceedings. That level of disrespect is unacceptable in any circumstances. The defendant is found in direct contempt as a result of his actions. At this point we will show the public defender has previously been appointed to represent this defendant and we will proceed with a direct contempt hearing on Tuesday. . . .

Defendant: You might as well continue it everyday.

Aug. 30 Tr. p. 2–3.

On September 4, 2007, Commissioner Rubick conducted a contempt hearing, at which he made the following comments:

> At [the previous hearing] defendant appeared and was found in direct contempt. Defendant's demeanor during the abbreviated initial hearing was intemperate [sic] and insolent. The defendant routinely interrupted the Court, tended to talk back displaying an openly disrespectful attitude. Despite Mr. Smith's in[-]court demeanor he was not held in direct contempt until shouting[,] and I quote[, "]have a nice f*cking day[,"] unquote[,] on the way out of the courtroom. Defendant's use of profanity compounded what was an otherwise inappropriate performance and required a finding of direct contempt. Mr. Smith was afforded an opportunity during the initial proceedings to answer the Court's questions, instead choosing to behave in [boorish] fashion. . . . Defendant's behavior undermined this Court's authority and this Court's ability to conduct business and was generally disruptive of the orderly administration of justice. At the time Mr. Smith did not have his court appointed counsel. . . . I took sanctions under advisement to afford Mr. Smith an opportunity to consult with his appointed counsel, . . . and also to make

sure that any decision that I might render would not be unduly influenced by emotion. . . .

Sept. 4 Tr. p. 2–3. After Smith made a statement, the trial court sentenced him as follows:

> Your behavior was completely out of line and if I had imposed sanctions last Thursday you very likely would have received the full 180 days in the Marion County Jail that I can [mete] out in connection with a finding of direct contempt. There are very few defendants I've seen in my seven years on the bench whose behavior rivals yours. Taking all maters into account as well as your 11th hour apology I'm going to sentence you to 60 days in the Marion County Jail as a sanction for your direct contempt[, to be served] at the conclusion of the sentence you are currently serving.

*Id.* at 8–9. Smith now appeals.

## DISCUSSION AND DECISION

### I. The Authority of a Master Commissioner

■ Before addressing the substance of Smith's arguments, we must consider whether Master Commissioner Rubick had the authority to punish Smith for direct contempt. Indiana Code section 33–33–49–16(e) provides that a Marion County "master commissioner shall report the findings in each of the matters before the master commissioner in writing to the judge or judges of the division to which the master commissioner is assigned." However, that section also provides that a master commissioner has the powers and duties prescribed for a magistrate pursuant to Indiana Code sections 33–23–5–5 through –9. Thus, pursuant to Indiana Code section 33–23–5–5, a master commissioner has the authority to "[p]unish contempt."

Given the authority specifically granted by Indiana Code section 33–23–5–5, we conclude that section 33–33–49–16(e) means that although a master commissioner must keep the judge apprised of the matters before him, the judge need not approve by signature the master commissioner's statutorily-authorized actions. If "punish contempt" does not mean to find and sentence a person for direct contempt in this situation, it is hard to envision the situation the provision is meant to address. Thus, because Master Commissioner Rubick was statutorily authorized to punish contempt, we find that Judge Gifford was not required to approve a final order by signature in this case.[1]

### II. Due Process

■ Smith first argues that Master Commissioner Rubick should have appointed a neutral judge to preside over the sanctions hearing and that his failure to do so violated Smith's due process rights. In

---

1. Additionally, we note that notwithstanding the general rule that a contempt order be reduced to writing, the trial court herein neglected to issue a written contempt order. *See* Ind.Code § 34–47–2–4(b) (requiring that the trial court describe the contemptuous acts of the defendant in a "statement [that] shall be reduced to writing"); *Skolnick v. State*, 180 Ind.App. 253, 263, 388 N.E.2d 1156, 1163–64 (1979) (emphasizing that "[t]he requirement of a written statement describing the allegedly contumacious conduct is an important and fundamental step in an otherwise summary procedure") (interpreting Indiana Code section 34–4–7–7, the predecessor to Indiana Code section 34–47–2–4). That said, as in *Skolnick*, even in the absence of a written order, we are easily able to discern the nature of the contemptuous conduct from the transcripts. Thus, while we emphasize the importance of the written statement or order provided for by Indiana Code section 34–47–2–4, we cannot say that Smith was harmed by the absence of such a statement and find that the trial court's failure to provide one does not warrant reversal of the contempt finding.

support of his argument, he directs us to a general rule that where a judge "does not act the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place." *Mayberry v. Pennsylvania*, 400 U.S. 455, 466, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).

A panel of this court has elaborated upon that general rule, first observing that trial courts may act instantly to address contemptuous acts to "protect the orderly administration of justice and maintain the authority and dignity of the court. . . ." *In re McDowell*, 426 N.E.2d 104, 106–07 (Ind. Ct.App.1981). Where immediate action is necessary to protect those interests, the court's interests outweigh a defendant's due process right to a neutral and detached bench. In *McDowell*, however, an attorney violated a motion in limine during a criminal trial and the trial court scheduled a contempt hearing to take place after the trial concluded to determine whether to find the attorney in contempt. *Id.* at 105–07. On appeal, this court noted that because the trial court did not address the attorney's actions immediately, "[t]here was no immediate need to protect the orderly administration of justice or to maintain the authority and dignity of the court." *Id.* at 107. Under those circumstances, McDowell's right to due process required the trial court to appoint a neutral judge to preside over his contempt hearing. The *McDowell* court explained that when no immediate action is necessary, the better course of action is to appoint a neutral judge because "there will be neither the likelihood of bias nor the appearance of bias when the judge who accused the party of contempt disqualifies himself from presiding at the contempt hearing." *Id.*

Here, unlike in *Mayberry* and *McDowell*, the trial court found Smith to be in direct contempt of court instantly and summarily. To protect the orderly administration of justice and maintain the authority and dignity of the court, the trial court found it necessary to hold Smith in contempt on the spot. It did, however, reserve the issue of sanctions for a later date. We do not find that the trial court's decision to. impose sanctions for Smith's contempt at a later time required it to recuse itself and appoint a neutral judge for that purpose. Inasmuch as it has been consistently held that a judge does not have to appoint a neutral judge in direct contempt proceedings when the finding of contempt is contemporaneous with the contemptuous act, we find that the trial court herein was not required to appoint a neutral judge for the sole purpose of assessing sanctions for Smith's contemptuous behavior and that its failure to do so did not violate Smith's due process rights.

### III. Contempt Finding

Direct contempt includes "'actions occurring near the court, interfering with the business of the court, of which the judge has personal knowledge.'" *Rice v. State*, 874 N.E.2d 988, 991 (Ind.Ct.App. 2007) (quoting *Hopping v. State*, 637 N.E.2d 1294, 1296 (Ind.1994)). Direct contempt is limited to those situations in which the conduct creates "an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public that, if not instantly suppressed and punished, demoralization of the court's authority will follow." *Curtis v. State*, 625 N.E.2d 496, 497 (Ind.Ct.App.1993). Specifically, directly contemptuous behavior manifests a disrespect for and defiance of a court. *In re Direct Criminal Contempt Proceedings*, 864 N.E.2d 425, 428 (Ind.Ct. App.2007).

Courts have the inherent power to punish acts of direct contempt summarily, and the purpose of this power is to enable the court to protect itself against gross violations of decency and decorum. *Rice,* 874 N.E.2d at 991. When reviewing a finding of contempt, we accept as true the statement entered by the trial court and will interfere with the judgment only where it clearly appears that the acts were not contemptuous. *Davidson v. State,* 836 N.E.2d 1018, 1020 (Ind.Ct.App.2005).

Here, the hearing began with the trial court asking Smith to state his name. Smith responded belligerently and uncooperatively from the outset, so the trial court decided to reschedule the hearing for the following day. Smith, in front of a gallery full of people, informed the trial court that he would refuse to appear the following day and then told the trial court to "have a good f*ckin['] day." Aug. 30 Tr. p. 2–3. The trial court immediately found Smith in direct contempt of court, at which time Smith continued to act disruptively, shouting, "[d]o you need me to say it again [be]cause I won't be here Tuesday if you have to drag me out of bed and bring me over here" and again insisting that the trial court "might as well continue [the hearing] everyday" because he would refuse to attend. *Id.* We cannot say that the trial court erred by concluding that Smith's use of an offensive epithet, continued outbursts, and flagrant disrespect of the trial court's authority constituted directly contemptuous behavior. Smith's actions interfered with the court's business and manifested a disrespect for and defiance of the court; consequently, the trial court properly found him to be in direct contempt.

The judgment of the trial court is affirmed.

ROBB, J., concurs.

RILEY, J., dissents with opinion.

Judge RILEY, dissenting with separate opinion.

I respectfully dissent. Master Commissioner Rubick did not have the authority to enter a final order on contempt. Our legislature has promulgated statutes that should control our disposition of this case. The majority has ignored those statutes.

A Marion County master commissioner has the powers and duties prescribed for a magistrate under Indiana Code sections 33–23–5–5 through 33–23–5–9. I.C. § 33–33–49–16(e). Indiana Code section 33–23–5–8 provides:

Except as provided under [Indiana Code sections 33–23–5–5(14) and 33–23–5–9(b) ], a magistrate:

(1) does not have the power of judicial mandate; and

(2) *may not enter a final appealable order unless sitting as a judge pro tempore or a special judge.*

(Emphasis added). Indiana Code section 33–23–5–5(14) says that a magistrate may "[e]nter a final order, conduct a sentencing hearing, and impose a sentence on a person convicted of a criminal offense as described in [Indiana Code section 33–23–5–9]," Likewise, Indiana Code section 33–23–5–9 provides:

(a) Except as provided under subsection (b), a magistrate shall report findings in an evidentiary hearing, a trial, or a jury's verdict to the court. *The court shall enter the final order.*

(b) If a magistrate presides at a criminal trial, the magistrate may do the following:

(1) Enter a final order.

(2) Conduct a sentencing hearing.

(3) Impose a sentence on a person convicted of a criminal offense.

(Emphasis added). Read together, these statutes establish that a magistrate or Marion County master commissioner can only enter a final appealable order in two situations: (1) following a criminal trial over which he or she has presided or (2) when sitting as a judge *pro tempore* or a special judge. In reaching its result, the majority fails to even mention Indiana Code sections 33–23–5–8 and 9.

If the powers of Marion County's master commissioners are to be expanded, that should be the decision of our legislature, not this court. Our legislature had a logical reason for limiting the powers of Marion County's master commissioners: they, unlike Marion County's judges, are not elected and therefore are not directly accountable to the people. They are appointed by, and serve at the discretion of, Marion County's judges. *See* I.C. §§ 33–33–49–12, –15, –16; Marion Superior Court Administrative Rule 304(C). Magistrates and commissioners do good and important work, but, in the end, they are not judges. Rather, they work for the judges and should be supervised by the judges. That is the purpose of requiring a judge to enter the final order in all but the few limited scenarios discussed above. If requiring judges to review and either approve or disapprove the action of their magistrates and commissioners is presently unfeasible, then the legislature can either create more judgeships or expand the powers of magistrates and commissioners. Until then, we must apply the statutes as written. The majority has failed to do so.

As for the specific facts of this case, I do not mean to suggest that a magistrate or commissioner should not play the primary role in identifying and sanctioning contemptuous behavior that occurs on his or her watch. *See* I.C. § 33–23–5–5(6) (granting magistrates authority to punish contempt.) In such situations, the magis-

trate or commissioner observes the behavior first hand and is best able to determine whether it rises to the level of contempt. Nonetheless, magistrates' and commissioners' contempt findings and resulting punishments, as with most of their decisions, should be reviewed and either approved or disapproved by the judges who employ and supervise them. Our legislature could hardly have been more clear when it said that magistrates and Marion County master commissioners "may not enter a final appealable order" except in the narrow circumstances outlined in Indiana Code sections 33–23–5–8 and –9.

In sum, I would hold that Master Commissioner Rubick had the power to punish contempt but that his action should have been reviewed by Judge Gifford. Master Commissioner Rubick was not entering a final order following a criminal trial over which he presided, nor was he sitting as a judge pro tempore or a special judge. Rather, he made a contempt finding during an initial hearing while serving as a Marion County master commissioner. Therefore, while he did have the authority to punish the contempt under Indiana Code subsection 33–23–5–5(6), the final order should have been entered by Judge Gifford under Indiana Code sections 33–23–5–8 and –9. I would remand this cause to give Judge Gifford the opportunity to either approve or disapprove the contempt finding and the resulting sentence.