ON PETITION TO TRANSFER
DeBRULER, Justice.
Appellant was convicted upon two charges of contempt of court in the Dearborn County Court. The Court of Appeals (First District) affirmed the convictions with one judge dissenting. Hopping v. State (1994), Ind.App., 627 N.E.2d 875. Appellant filed a petition to transfer which we now grant.
Appellant raises multiple issues in support of this appeal which we consolidate and restate as follow:
1) whether his conduct reflected in the record supports the use of summary proceedings and the determinations of guilt; and
' 2) whether the sentences were an abuse of discretion.
At approximately 11:00 a.m. on July 8, 1993, Judge Witte took the bench in open court and conducted a contempt hearing. The proceeding was duly reported. Appellant was then present and in the custody of a deputy sheriff. The judge explained to appellant that he faced a direct criminal contempt charge because of his immediately preceding conduct.[1] Appellant had appeared that morning in the office outside the judge’s chambers seeking to have the judge’s secretary schedule hearings upon seven of his cases on a single day. She said that court policy considered landlord-tenant disputes, like Appellant’s, to be contested and did not permit the court to hear more than one contested case per day. When Appellant insisted, she checked with Judge Witte who reaffirmed the court’s policy.
Upon hearing the Judge’s response Appellant became loud and boisterous, insisting in a bullying manner that hearings for his cases be scheduled for the same date. Judge Witte heard the commotion, was interrupted in his conduct of court business, left his *1292 chambers, and personally explained the court’s policy to Appellant. Judge Witte then asked Appellant to leave, which he refused to do. Appellant threatened to use his filing fee to pay for an advertisement in the local newspaper alleging that Judge Witte was a drug dealer and a drug user and that Appellant had been treated unfairly by court personnel. Angered, the judge said he would sue if such a false accusation were published.
Judge Witte understood Appellant’s threat as an attack upon the integrity of the court and an attempt to intimidate the court into granting his demands, and finally ordered Appellant into the courtroom for a contempt hearing. Appellant went into the courtroom but left, telling the judge that he was a busy man with more important things to do. Deputy Sheriff Michael Horton escorted Appellant back into the courtroom.
Appellant claimed at the hearing that he had not been loud and boisterous, had been provoked, had not asked to see the judge and had received no explanation of the scheduling rule. Judge Witte found Appellant guilty and sentenced him to thirty (30) days in the Dearborn County Jail.
As the deputy sheriff was leading Appellant from the courtroom, Appellant said, ‘Well, I had a lot of friends killed in World War II by the Japanese. It might’ve been some of [Judge Witte’s] relation, you don’t know.” Judge Witte, who is of Japanese ancestry, ordered Appellant returned to his seat in the courtroom and held an additional contempt hearing based on these remarks. Judge Witte offered Appellant the opportunity to respond, retract or apologize but he denied making the statement. Judge Witte found Appellant guilty of a second count of direct criminal contempt and sentenced him to an additional thirty (30) days in jail, to be served consecutively to the earlier imposed sentence.
I
Appellant claims that the trial court was in contravention of Indiana law in initiating and conducting summary proceedings for direct criminal contempt. He claims that such proceedings are not appropriately employed unless the relevant act was committed in the presence and with the knowledge of the court and disrupted an ongoing proceeding requiring immediate punishment to maintain order in the court and respect for its authority. In re Marriage of Neiswinger (1985), Ind., 477 N.E.2d 257; Brennan v. State (1961), 242 Ind. 79, 173 N.E.2d 312.
The contempt power encompasses a broad and varied group of actions. Citations for civil contempt are intended to be coercive, while those for criminal contempt, as in this case, are meant to be punitive. Direct contempt involves actions occurring near the court, interfering with the business of the court, of which the judge has personal knowledge. Indirect contempt undermines the activities of the court but fails to satisfy one of the other direct contempt requirements. See generally Cecilia J. McGregor, Use of the Contempt Power, 35 Res Gestae 12 (July 1991).
It is true that this Court has frequently employed phraseology which could be read to indicate that direct criminal contempt requires a finding of disruption of an actual court proceeding. See Neiswinger, 477 N.E.2d at 261; Brennan, 242 Ind. at 81, 173 N.E.2d at 313. However, while such disruption may be a sufficient condition for a finding of direct criminal contempt, it is clearly not a necessary condition. In addition, in both Brennan and Neiswinger, direct criminal contempt was inappropriate because important information required to support the charges of misconduct was not immediately apparent to the court. Brennan, 242 Ind. at 82-83, 173 N.E.2d at 312-313; Neiswinger, 477 N.E.2d at 260.
The power of Indiana courts to summarily punish for direct criminal contempt, while specified by statute, rests upon the common law. It is inherent in the courts. McIntire v. State (1967), 248 Ind. 142, 144-45, 223 N.E.2d 347, 348-49. It is essential for a court to be able “[t]o protect itself against gross violations of decency and decorum ...” as it pursues justice. Brown v. Brown (1853), 4 Ind. 627. Appellant’s claim that direct criminal contempt can only occur in the context of a hearing is simply a misstatement of the law. This Court has long recog *1293 nized that it is not the actual interference with a legal proceeding that is to be prevented, but the undermining of the judicial process. This concern for the integrity of the process has supported findings of direct criminal contempt for merely making contumacious statements in a document filed with a court, even where it is not read at a hearing. LaGrange v. State (1958), 238 Ind. 689, 158 N.E.2d 593; Kerr v. State (1922), 194 Ind. 147, 141 N.E. 308; Coons v. State (1922), 191 Ind. 580, 134 N.E. 194. The concern is for the integrity of courts, not hearings or judges. Grimm v. State (1959), 240 Ind. 125, 127-28, 162 N.E.2d 454, 456.
[6]Contempt of court involves disobedience of a court which undermines the court’s authority, justice, and dignity. Any act related to a current or pending proceeding which tends to deter the court from the performance of its duties may support a contempt proceeding. Any act which manifests a disrespect and defiance of a court may constitute direct criminal contempt. Brum-baugh v. State (1986), Ind., 491 N.E.2d 983, 984; In re Nasser (1994), Ind.App., 627 N.E.2d 1338, 1340-41. See also Turquette v. State (1927), 174 Ark. 875, 298 S.W. 15 (striking a judge because of adverse ruling supports a summary proceeding for criminal contempt, even when the altercation occurs in another jurisdiction); Mitchell v. State (1990), 320 Md. 756, 580 A.2d 196 (making an obscene gesture after a sentencing hearing is direct criminal contempt); Jackson v. Bailey (1992), 221 Conn. 498, 605 A.2d 1350 (uttering an obscenity after a bond reduction hearing is direct criminal contempt). Appellant’s activities certainly manifested the requisite disrespect.
In summation, where, as here, the court has firsthand and immediate knowledge of acts demonstrating a clear disregard for its authority which threaten to undermine the integrity of the judicial process and impede the performance of court work, summary proceedings for direct criminal contempt are available. We do not seek to ascertain the presence of a formal hearing but merely that the inappropriate behavior bears a close relationship to the court’s judicial activities. Appellant had come to the courthouse to schedule small claims cases, the judge was working on other legal matters, and the secretary was trying to organize the docket. Appellant’s outburst interrupted these activities, called into question the integrity of the process, and manifested disrespect and disobedience towards the court, which properly subjected him to direct criminal contempt proceedings.
II
Appellant claims that the Court of Appeals erred in finding that Appellant had waived his claim that his sentences were excessive. Appellant confuses ability with obligation. Appellant raised this issue in his brief to the Court of Appeals, then failed to provide argument or authority to support his contentions. It is true that an Indiana appellate court can consider a claim even when the issue is not properly raised in an initial brief. Ward v. State (1991), Ind., 567 N.E.2d 85, 86. However, it is clear that no appellate court in Indiana is required to consider such claims. Everroad v. State (1991), Ind., 571 N.E.2d 1240, 1246.
Appellant also claims that the Court of Appeals erred by not reviewing his sentence. IndAppellate Rule 17. Review of sentences is available on appeal but may be waived if not argued. Everroad, 571 N.E .2d at 1246. Appellant failed to produce such argument and the Court of Appeals properly treated it as waived.[2]
Even if this issue had not been waived, the sentence must be manifestly unreasonable if this Court is to modify it. Johnson v. State (1983), Ind., 455 N.E.2d 897, 902. In order to find a sentence manifestly unreasonable we must determine that no reasonable person could find the sentence appropriate given the particular offense and character of the offender. Clay v. State (1981), 275 Ind. 256, 260, 416 N.E.2d 842, 844-845. A term of sixty (60) days is not manifestly unreasonable for two (2) counts of *1294 direct criminal contempt. “Punishment for contempt is generally a matter left to the sound discretion of the trial court....” Davis v. Sponhauer (1991), Ind.App., 574 N.E.2d 292, 302. We leave it there.
CONCLUSION
Transfer is granted, the decision of the Court of Appeals is vacated, and this cause is remanded to the trial court to order Appellant incarcerated for the remainder of his sentence.
SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

. In cases of direct contempt, we accept as true the statement entered of record by the trial court. Blankenbaker v. State (1929), 201 Ind. 142, 153, 166 N.E. 265, 268. However, we examine the record to determine whether the acts recorded do, in fact, constitute contempt. State ex rel. Stanton v. Murray (1952), 231 Ind. 223, 235, 108 N.E.2d 251, 257.

. It is possible that the Court of Appeals did review Appellant's sentences and denied relief without comment.