**Vernon D. CARTER, Appellant–Respondent,**

v.

**Barbara JOHNSON, Appellee–Petitioner.**

No. 34A02–0010–CV–681.

Court of Appeals of Indiana.

Feb. 23, 2001.

---

Scott P. Sullivan, Noel & Noel, Kokomo, IN, Attorney for Appellant.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Vernon Carter brings this interlocutory appeal of the trial court's denial of his emergency petition for an order to rescind the warrant for his arrest.

We reverse.

### ISSUE

Whether the trial court has authority to incarcerate an individual for indirect contempt upon the individual's alleged violation of a temporary protective order, absent compliance with the provisions of the indirect contempt statute.

### FACTS

On October 6, 2000, Barbara Johnson filed a verified petition seeking temporary and permanent protective orders against Carter. At an *ex parte* hearing that same day, the trial court heard her allegations that Carter had broken windows and caused other damage to the house they had shared. The trial court then issued an order enjoining Carter from "damaging the property" of Johnson, or either "abusing or threatening to abuse" or "contacting" Johnson or any member of her house-

hold. (R. 7). The order further stated that a violation thereof constituted the misdemeanor offense of invasion of privacy. By its terms, the order expired October 27. A hearing was set for October 30 on the issue of a permanent protective order. Carter was served with the temporary protective order on October 11.

On October 18, Johnson again appeared before the trial court *ex parte*. She testified that since the order was issued, Carter had violated it repeatedly. She testified that Carter had stood outside her home and yelled threats, had bashed in her front door, had told others that he would kill Johnson, and had taken her late mother's diamond rings. The trial court advised Johnson that she could "file a police complaint with the Prosecutor" if she wanted "charges brought against him" for property damage and theft. (R. 44). However, the trial court also found "probable cause to believe" that Carter had violated the protective order, and ordered Carter's arrest. (R. 43). Carter was arrested and posted bond on October 19.

On October 20, Johnson appeared for a third *ex parte* hearing before the trial court. She testified that when Carter was released the day before, he had come to her house and "started just cussing" at her nine-year old son. (R. 50). The trial court found "probable cause to believe [Carter] committed indirect contempt of Court after being released from jail on October 19," and again ordered him arrested but this time "held without bond." (R. 54, 4).

Carter was arrested and incarcerated in the county jail on October 24. That same day, counsel for Carter filed an emergency petition for an order rescinding the bench warrants of October 18 and October 20. The petition asserted that the court had heard no allegation from the State that Carter had violated the criminal code, and the trial court had failed to comply with

the statutory prerequisites to incarceration for indirect contempt. The trial court denied Carter's petition, declaring that "an arrest for violation of a protective order can be effected upon the sworn testimony of a violation—or an affidavit." (R. 4).[1] Carter brings this interlocutory appeal of that order.

## DECISION

■ At the outset, we note that no appellate brief has been filed on behalf of Johnson. In such a case, we may reverse the trial court if the appellant establishes prima facie error. *Nielsen Buick Jeep Eagle Subaru v. Hall*, 726 N.E.2d 358, 360 (Ind.Ct.App.2000). In this context, prima facie is defined as "at first sight, on first appearance, or on the face of it." *Id.*

■ Carter claims that the trial court acted "without authority in this case" when it subjected him to arrest and incarceration without due process. Carter's Brief at 4. Accordingly, we consider the various possible sources of authority for the trial court's action.

Indiana Code § 34–26–2–1 *et seq.* provides for protective orders aimed at preventing abuse. When a petitioner avers that certain acts have occurred, the trial court may issue a temporary protective order upon *ex parte* review. *Id.* A hearing thereon must be set within thirty days of the petition's filing, and the respondent must be given notice thereof. *Id.* The Chapter contains no provision that expressly authorizes the arrest and incarceration of a respondent whom the trial court has found probable cause to believe has violated the temporary protective order during the interim before the hearing.

■ The temporary protective order issued against Carter stated that "violation of this temporary order is a crime." (R. 8). The order proceeded to specify that one who knowingly or intentionally violates "this order" commits the offense of invasion of privacy, a class B misdemeanor, citing Indiana Code § 35–46–1–15.1, and one who violates it "a second time involving the same protected person" commits a class A misdemeanor. (R. 8). The trial court stated that an arrest could be effected "upon the sworn testimony of a violation." (R. 4). However, we believe that a more complete statement in this regard would necessarily include the fact that such sworn testimony had resulted in the filing of a criminal charge by the prosecutor's office. The record contains nothing to indicate that the State did indeed charge Carter with such a misdemeanor. Further, as our supreme court has explained, "It is the function of the prosecuting attorney, not the court, to investigate crimes and bring criminal charges." *Meyers v. State*, 266 Ind. 513, 364 N.E.2d 760, 763 (1977). Thus, the trial court itself was without authority to charge Carter with the misdemeanor offense of invasion of privacy. Because there was no extant criminal charge based upon a sworn statement, there could be no warrant for an arrest justified thereby.

■ Finally, we consider whether the arrest and incarceration might have been within the trial court's contempt power. "Contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity." *Hopping v. State*, 637 N.E.2d 1294, 1297 (Ind.1994). It includes any act which "tends to deter the court from the performance of its duties." *Id.* There are two

1. On October 24, when the trial denied Carter's petition, it scheduled a hearing on whether Carter had violated the protective order for November 13, some three weeks later.

types of contempt, direct and indirect. *Williams v. State ex rel. Harris,* 690 N.E.2d 315, 317 (Ind.Ct.App.1997). In direct contempt, there is (1) action that interferes with the business of the court, and (2) the court has "firsthand and immediate knowledge" of that action. *Hopping,* 637 N.E.2d at 1296, 1297. Alternatively, acts of indirect contempt are those which undermine the activities of the court but fail to satisfy the requirements to be direct contempt. *Williams,* 690 N.E.2d at 317. Indirect contempt proceedings require "an array of due process protections, including notice and the opportunity to be heard." *Id.*

■ The record herein does not indicate that Carter ever appeared personally in the trial court or had committed any acts before being incarcerated of which the trial court had personal knowledge. Thus, it appears that he could not have committed an act of direct contempt of the court. However, according to Johnson, Carter did disobey the temporary protective order issued by the trial court. Therefore, Carter could have been found to have committed indirect contempt, defined by statute to include "willful disobedience" of a "lawfully issued" order of a trial court. Ind.Code § 34–47–3–1. Yet it appears undisputed that Carter received none of the due process protections that are part and parcel of the indirect contempt statutory scheme. *See* I.C. § 34–47–3–1 *et seq.* There was no "rule to show cause"—specifying the "facts alleged to constitute the contempt" and giving him "a time and place" at which to show that he "should not be ... punished"—served on Carter before he was effectively punished by being incarcerated. *See* Ind.Code § 34–47–3–5. It is the "rule to show cause" provision of the statute that "fulfills the due process requirement that a contemptor be provided with adequate notice and an opportunity to be heard." *Mitchell v. Stevenson,* 677 N.E.2d 551, 560 (Ind.Ct.App.1997), *trans. denied.*

We agree with Carter that, having failed to comply with the due process requirements of the indirect contempt statute, the trial court was without authority to order him arrested and incarcerated. Consequently, we reverse the trial court's order incarcerating Carter.

RILEY and ROBB, JJ., concur.