

FILED

May 19 2016, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David M. Payne
Ryan & Payne
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mitchell Carroll,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 19, 2016

Court of Appeals Case No.
27A02-1510-MI-1743

Appeal from the Grant Superior
Court

The Honorable Dana J.
Kenworthy, Judge

Trial Court Cause No.
27D02-1507-MI-93

**Bailey, Judge.**

# Case Summary

Mitchell Carroll ("Carroll") was charged with a number of offenses in the Grant Superior Court. In response to Carroll's behavior during hearings conducted both by video conference and with Carroll physically present in the courtroom, the trial court found Carroll to be in direct contempt of court and, as a result, ordered Carroll incarcerated for ninety days. Carroll appeals.

We affirm.

# Issues

Carroll raises two issues for our review. We restate these as:

I. Whether, because Carroll's conduct occurred while he was not physically present in the courtroom, a contempt citation is barred under Indiana law; and

II. Whether the trial court erred when it concluded that Carroll's conduct on two occasions was contumacious.

# Facts and Procedural History

Carroll was arrested and charged in the Grant Superior Court with several criminal offenses. The trial court conducted an initial hearing in Carroll's case on July 7, 2015. Carroll was not transported to the courtroom for this hearing. Instead, Carroll (along with numerous other defendants that day) participated in the hearing by means of a video conferencing system connecting the Grant

County Jail with the courtroom. Carroll was represented by a public defender at the hearing.

[5] During the initial hearing, Carroll answered the trial court's questions concerning his name and age. From that point, Carroll ceased cooperating with the court, instead cutting across the trial court's questions on numerous occasions. Rather than responding to the trial court's questions, Carroll stated that the charges against him were "trumped up" (App'x at 6), used profanity, and interrupted the court to say, "You all racist. I don't want to hear it." (App'x at 7.)

[6] In response to Carroll's conduct, the trial court told Carroll, "One more time and I will hold you in contempt of court. Do you understand[?]" (App'x at 7.) While the court was explaining the importance of a correct mailing address in the event Carroll posted bond, Carroll cut across the court's explanation and stated his address. The court stated, "You just interrupted me again," and asked Carroll whether the address he provided was in Grant County. (App'x at 7.) Rather than respond to the court's question, Carroll intimated that he wanted to make a statement to the court. The court then stated, "We are done with this hearing… What I am going to do is give you an opportunity to calm down. If you act this way next time, you will be incarcerated for contempt." (App'x at 8.)

[7] Throughout this session, the trial court noted that Carroll "was clearly angry, speaking in an irritated and disrespectful tone," and "was slouched forward in

his chair, with his hair covering his face." (App'x at 3.)  While the trial court was still talking to him, the court noted, Carroll "got up and walked out of view of the video, toward the exit door of the video room." (App'x at 3.)  As a result of Carroll's conduct, the trial court continued the initial hearing to the following day, July 8, 2015.

[8] During the continued hearing, the trial court informed Carroll of the charges against him and of the existence of a no-contact order as to his alleged victim. The court asked Carroll whether he understood the charges against him and the no-contact order, and Carroll stated he understood these matters.  The trial court also confirmed Carroll's address.  The trial court then asked Carroll why the court should not hold him in contempt for his conduct the prior day.  After listening to Carroll's statements that he had never been in trouble before, the trial court reiterated that the hearing had been continued to allow Carroll to calm down.  The court went on to state that it would suspend the thirty-day sentence for contempt that it had planned to impose "on the condition that you just act right in Court from this point forward, okay?" (Jul. 8, 2015 Tr. at 7.)

[9] Accordingly, on July 8, 2015, the trial court entered an order finding Carroll to have been in contempt of court on July 7, 2015, finding that Carroll's conduct was disrespectful and interfered with the operation of the court.  However, the trial court further found that Carroll had apologized, and suspended the sentence for contempt, reiterating the requirement that Carroll "respect the decorum of the Court in all further proceedings" in the case.  (App'x at 4.)

[10] During the pendency of the underlying criminal matter, Carroll requested and was granted a speedy trial. The trial was scheduled to begin on September 22, 2015, and on the morning of September 21, 2015, the court was conducting a hearing on motions in limine prior to trial. During the hearing, Carroll requested that his public defender be dismissed and new counsel be appointed. To afford the State an opportunity to respond to the motion, and in light of a hearing in another case that had already been delayed by the hearing on Carroll's case, the trial court stated that the parties would reconvene later that afternoon. (Sept. 21, 2015 Morning Tr. at 12.)

[11] When the parties reconvened at 1:30 p.m. that day, the court asked Carroll to explain the reason for his request for new counsel. Carroll complained that his attorney had been "speaking…as if he is a Prosecuting [sic] the case," and that the court's earlier decision to continue the hearing from the morning was "illegal" because the court "rudely stopped" him. (Sept. 21, 2015 Afternoon Tr. at 5.) Carroll further contended that the trial court judge "had it out for me" because he had said that the judge and prosecutor were racist, and accused the trial court judge of being a "Women's Advocate." (Sept. 21, 2015 Afternoon Tr. at 7.) Carroll continued to air his grievances, and concluded by again requesting new counsel.

[12] When asked, Carroll's counsel indicated that despite Carroll's change in demeanor over the prior week, the case was ready for the scheduled trial. The trial court explained to Carroll that requesting appointment of a new attorney would result in waiver of the speedy trial setting for the following day. Carroll

insisted that he receive new counsel and denied that he was waiving his speedy trial rights, interrupting the trial court's efforts to explain the consequences of a change in counsel. When the trial court pointed out Carroll's conduct and asked why he should not be held in contempt for continuously interrupting the court proceedings, Carroll again interrupted the trial court judge, accused the court of bias, and aired numerous grievances concerning the proceedings.

[13] The trial court judge then pointed out to Carroll that he was being provided with "a chance right now to apologize and avoid contempt." (Sept. 21, 2015 Afternoon Tr. at 23.) The court told Carroll that "after you um, accused the Court of being angry at you for setting this case at 1:30, you sat there in the jury box and continued to talk and be disrespectful to another inmate sitting in that jury box." (Sept. 21, 2015 Afternoon Tr. at 23.) Carroll then interrupted the trial court again, prompting the court to reinstate the previously-suspended contempt sentence of thirty days. As Carroll continued to insist that the contempt citation was illegal, the court further noted that "this morning you continued to make guttural sounds throughout…another Defendant's hearing. Continued to be disruptive… You are being treated this way because of how you have appeared in this Court." (Sept. 21, 2015 Afternoon Tr. at 23-24.)

[14] As the trial court continued to issue its rulings on Carroll's motion for new counsel and the question of speedy trial waiver, Carroll continued to interrupt the court and threatened to sue the court. The trial court then increased the total term of imprisonment for the contempt citation to ninety days "[f]or the continued interruption." (Sept. 21, 2015 Afternoon Tr. at 25.)

[15]  In a subsequent written order finding Carroll in contempt, the trial court found that from the outset of the September 21, 2015 hearings, Carroll was agitated and "his tone demanding and aggressive." (App'x at 19.) Carroll also argued with his counsel, "increasing both the volume and pace of his speech." (App'x at 19.) The court also observed that during the hearing following Carroll's morning hearing, Carroll glared "in an intimidating manner" at the court's bailiff, the prosecuting attorneys, and at the trial court judge. Carroll also attempted to physically intimidate a courtroom deputy, "puffing his chest outward" and calling the deputy a "[C]racker." (App'x at 22.) Carroll had also admitted, in one of his lengthy statements to the trial court, that he had been in contact with his alleged victim, in violation of the no-contact order.

[16]  The court found that Carroll's conduct continued to "impede communications and waste Court time," and that Carroll's conduct at the afternoon hearing precluded the court from issuing advisements of rights related to the change of trial counsel. (App'x at 23.) Entering its finding of contempt, the trial court reaffirmed its oral statement that Carroll would serve a ninety-day period of incarceration as sanction for contempt of court.

[17]  New counsel was appointed to represent Carroll at trial and on appeal of the contempt order. This appeal ensued.

# Discussion and Decision

# Standard of Review

[18] Carroll challenges the trial court's imposition of contempt sanctions, arguing that no direct contempt sanctions were available for one of his hearings, and that there was in any event insufficient evidence to sustain the contempt citations.

[19] The power to impose contempt sanctions is inherent in the courts, and is essential to ensuring that each court is not deterred "from the performance of its duties" due to interferences that undermine the judicial process. *Hopping v. State*, 637 N.E.2d 1294, 1297 (Ind. 1994), *cert. denied*. On appeal, we afford great deference to trial courts' contempt decisions. Accordingly, we accept as true the statement of facts entered by the trial court. *Davidson v. State*, 836 N.E.2d 1018, 1020 (Ind. Ct. App. 2005). Indiana appellate courts will only interfere with a contempt finding "where it clearly appears the acts do not constitute contemptuous acts." *In re Nasser*, 644 N.E.2d 93, 95 (Ind. 1994).

# Direct Contempt for Conduct on Video

[20] Carroll's first contention on appeal is that the trial court abused its discretion when it cited him for contempt related to his conduct during the video-based hearing on July 7, 2015, because a video-based hearing is not a setting in which direct contempt can occur. Carroll rests this argument on the language of the Indiana Code, which provides:

> Every person who disturbs the business and proceedings of a court:

> (1) by creating any noise or confusion;
>
> (2) in a court of record; and
>
> (3) while the court is open for and engaged in the transaction of business;
>
> is considered guilty of a direct contempt of court.

Ind. Code § 34-47-2-1(a). Carroll draws our attention specifically to the second element, Subsection 34-47-2-1(a)(2). Carroll argues that because he was not physically in the courtroom on July 7, 2015, his conduct was not "in a court of record."

[21] We disagree. Read as a whole, the statute requires that the disturbance create noise or confusion in a court of record while the court is conducting business—not that the individual who creates the disturbance be physically present in the courtroom. "To constitute direct contempt, the act must be within the judge's personal knowledge, though it does not necessarily have to occur inside the court or during a judicial proceeding." *Williams v. State ex rel. Harris*, 690 N.E.2d 315, 317 (Ind. Ct. App. 1997). Further, the statute does not in any manner limit the means by which the disturbance may be caused: by its own terms, it is applicable whether the disturbance is the result of criminal conduct, talking or gesturing, or "in any other manner." I.C. § 34-47-2-1(b).

[22] That Carroll's conduct occurred while Carroll was in the Grant County Jail, across the street from the courthouse in which the trial court was located, does

not preclude applicability of the direct contempt statute, so long as his conduct created a disturbance in a court of record. This is so whether or not Carroll himself was physically present in the courtroom at the time. Holding otherwise would read the statute too narrowly, and would compromise the ability of trial courts to ensure their ability to conduct business and dispense justice. *See Hopping*, 637 N.E.2d at 1296-97 (setting forth the rationale for the direct contempt powers of Indiana's trial courts).

## Merits of the Contempt Citations

[23] Here, Carroll was twice held in direct contempt of court. "The power of Indiana courts to summarily punish for direct criminal contempt, while specified by statute, rests upon the common law. It is inherent in the courts." *Id.* at 1296. Vesting this power in the courts is "essential for a court to be able to protect itself against gross violations of decency and decorum [ ] as it pursues justice." *Id.* (citations and quotations omitted). It is not "actual interference with a legal proceeding" that contempt seeks to prevent, "but the undermining of the judicial process." *Id.* at 1297. Accordingly, contempt citations have been upheld on appeal "for merely making contumacious statements in a document filed with a court, even where it is not read at a hearing." *Id.* Crucially:

> Contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity. *Any* act related to a current or pending proceeding which tends to deter the court from the performance of its duties may support a contempt proceeding. *Any* act which manifests a disrespect and defiance of a court may constitute direct criminal contempt.

*Id.* (emphasis in original).

[24] Indiana courts have long held that "[d]isorderly conduct, insulting demeanor to the court, and a disobedience of its orders *in facie curiae* constitute a direct contempt." *Holman v. State*, 105 Ind. 513, 5 N.E. 556, 557-58 (1886). The contempt citations of trial courts have been affirmed where the entirety of the contumacious conduct occurred when a defendant "referred to [a] judge using profanity" after sentencing for several violent crimes. *Holly v. State*, 681 N.E.2d 1176, 1177 (Ind. Ct. App. 1997).

[25] In both incidents in question here, Carroll repeatedly interrupted the trial court in separate hearings. During the first hearing, on July 7, 2015, Carroll simply walked off-camera, forcing the court to reschedule Carroll's initial hearing to the following day. In light of Carroll's improved conduct on July 8, 2015, however, the trial court suspended the contempt sanction.

[26] During September 21, 2015, Carroll repeatedly interrupted the trial court judge, as well as his counsel and counsel for the State. After Carroll's hearing was continued to allow the State time to respond to his request for a change of appointed counsel, Carroll remained in the jury box and was disruptive, speaking to another defendant, attempting to intimidate court staff and the trial court judge, and making guttural sounds that disrupted the proceedings. Throughout the proceedings, Carroll insisted that the trial court judge was racist and biased against him and that the judge had a conflict of interest in the case. Carroll repeatedly threatened to sue the judge, and upon being found in

contempt again on the afternoon of September 21, 2015, attempted to physically intimidate a courtroom deputy.

[27] Simply put, there is more than adequate evidence to sustain the trial court's findings that Carroll engaged in direct contempt of court.

# Conclusion

[28] That Carroll's conduct occurred during a video hearing, and not in a courtroom, did not preclude application of the contempt statute. The trial court did not abuse its discretion in twice finding that Carroll was in contempt of court.

[29] Affirmed.

Bradford, J., and Altice, J., concur.