## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 17 2018, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Douglas M. Grimes
Douglas M. Grimes, PC
Gary, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Douglas M. Grimes, *Appellant,* <br><br> v. <br><br> State of Indiana, *Appellee.* | October 17, 2018 <br><br> Court of Appeals Case No. 45A05-1711-MI-2818 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Elizabeth F. Tavitas, Special Judge <br><br> Trial Court Cause No. 45D03-1710-MI-2 |

**Bailey, Judge.**

# Case Summary

[1] While representing a litigant in a small claims action, attorney Douglas M. Grimes ("Grimes") was found to be in direct criminal contempt of court. As a sanction, the trial court ordered Grimes to pay $100. Grimes now brings this *pro se* appeal, raising several issues, which we consolidate and restate as whether the trial court abused its discretion by finding him to be in contempt.

[2] We affirm.

# Facts and Procedural History

[3] Grimes represented Ronald Prothos ("Prothos"), the defendant in a small claims action brought by Tawanna Brown ("Brown"). The case arose after Brown purchased a property that Prothos had been occupying. Brown obtained an order granting her immediate possession of the property, and the trial court set a hearing on damages. The damages hearing was held in October 2017, at which Grimes appeared on behalf of Prothos and Brown appeared *pro se*.

[4] At the hearing, Brown testified that an air conditioning unit had been removed from the property. Throughout the hearing, Grimes asked Brown repetitive questions concerning, *inter alia*, how old the missing unit was and her basis for believing Prothos was responsible. At times, the trial court told Grimes that a question had been asked and answered. At one point, Grimes kept interrupting Brown, and the trial court told Grimes that he needed to "let her answer the questions." Tr. Vol. II at 11. After later expressing concern that a microphone

was not picking up Grimes's voice, the trial court instructed Grimes that he would "need to be at a microphone or we're not picking you up." *Id.* at 14.

[5] When Grimes asked Brown the age of the unit—a question he had previously asked twice—this exchange followed:

Court: Asked and answered.

Grimes: I didn't ask . . . I didn't ask that question before.

Court: Yes you did.

Grimes: Well what was the answer?

Court: Asked and answered.

Grimes: What was the answer . . . I'm asking what was the . . .

Court: Your next . . .

Grimes: . . . answer . . . you said . . .

Court: . . . your next question.

Q: Yes how old was the unit?

Court: Asked and answered.

Grimes: Well what was the . . . what was the . . . if the Court would allow may I also just ask that question once again, to get an answer to the question?

Court: No you may not.

*Id.* at 17-18.

[6] When Grimes later cross-examined Brown about an exhibit, the trial court again expressed concern that Grimes was not being picked up by a microphone.

The trial court stated that it would not work for Brown and Grimes to share a microphone. Grimes explained that he needed to point to the exhibit as he asked Brown questions. The court then told Grimes that he would "really need to speak up." *Id.* at 22. Shortly thereafter, there was the following exchange:

Court: Okay so you're done with that exhibit then?

Grimes: No not yet.

Court: I - - I'm going to ask you to step back, I'll take the exhibit, go to your microphone.

Grimes: Let me make my record.

Court: I'm going to ask you to go to the microphone and make your record.

Grimes: I . . . will and I'm going to make my record. I am requesting that the Court recuse itself because of the outward hostility shown to counsel in this particular case, and its not just the first time, [it has] happened repeatedly. Where for some reason this Judge cannot be fair to my clients in these proceedings because I'm representing them and so I respectfully ask the Court to recuse itself from this case.

Court: Your motion is denied. The Rules of Professional Conduct require you to act . . . in a way that conforms with the Rules of Professional Conduct and this Court under the Rules of Evidence has the duty and the ability to determine the decorum and the procedures in this Court and . . . your motion is denied. Your next question.

Grimes: My next question is the grounds for the Court recusing other than simply the power of the Court?

Court: Your next question or cross-examination.

*Id.* at 23-24.

Later, Grimes again asked Brown whether she had seen Prothos remove the unit, which led to this exchange:

> Court: I'm gonna . . . tell you Mr. Grimes that if you continue to ask the same questions over and over again, I will then stop cross-examination. We are going to finish both of these cases today and the Court is going to rule today and I'm not going to have you waste my time.
>
> Grimes: Once again, I think, the record now clearly reflects the Court's attitude toward this case and toward counsel. So, once again I respectfully ask the Court to recuse itself.

*Id.* at 28. The trial court declined the request, and Grimes said that he had nothing further on cross-examination. At that point, the trial court asked Brown if there was anything she wanted to explain, noting that the court would be permitting only direct examination, cross-examination, and redirect in the small claims matter. As Brown started to speak on redirect, Grimes interjected:

> Grimes: Just one second please, I want to make my record. Once again, the Court has indicated her bias and has ind . . .
>
> Court: Denied sit down . . .
>
> Grimes: [inaudible]
>
> Court: . . . sit down.
>
> Grimes: [inaudible]
>
> Court: . . . sit down Mr. Grimes . . .
>
> Grimes: . . . Judge I have the right to make my record.
>
> Court: Mr. Grimes . . .
>
> Grimes: . . . I have the right . . .

Court:        . . . sit down I will hold you in contempt of Court . . .

Grimes:      . . . I have a right to make a record.

Court:        You are in direct criminal contempt of court if you continue to disrupt this proceeding.

Grimes:      I think the record shows . . .

Court:        You may continue.

Brown:      Um I was . . . I don't know what I wanted to say is that . . .

Grimes:      No - - no - - no there's no question before you.

Brown:      I thought it was . . . .

*Id.* at 28-29. The court then said that it would be holding a five-minute recess to give Grimes time to consider his "next move in this case." *Id.* at 30. The court stated that Grimes was "continually . . . violating the code of professional conduct" by disrupting the tribunal. *Id.* After the recess, the court found "that Mr. Grimes is in direct criminal contempt of the Court." *Id.* at 31. The trial court then made the following statement:

> [R]epeatedly during these proceedings Mr. Grimes has argued with the Court, has talked over the Court, has not taken the direction of the Court which, for example, . . . being told where to stand so that I can make a record at a microphone, he has insisted on . . . defying the Court's directions. [He] has been told numerous times not to ask the same questions that have been asked, that Mr. Grimes is delaying and impending [*sic*] the progress of this trial and the justice that this Court is bound to deliver. Under the Rules of Evidence this Court . . . has the duty to make sure that decorum is followed in this Court. [His]

> conduct has been disrespectful to the Court . . . and . . . has been
> impeding the progress of this case. Mr. Grimes, we can hold
> your contempt hearing now or we can hold it after these
> proceedings are concluded, what is your preference?

*Id.* Grimes elected to postpone the hearing, which the court held immediately after ruling on the underlying matter. At the hearing, the court again explained its finding of direct criminal contempt and offered Grimes an opportunity to purge himself. After Grimes made a statement, the trial court imposed a fine of $100. The court later entered a written order from which Grimes now appeals.

# Discussion and Decision

[8] Contempt of court "is not a criminal offense. It is a *sui generis* proceeding neither civil nor criminal in nature, although both of those labels are used to describe certain categories of contempt." *State v. Heltzel*, 552 N.E.2d 31, 33 (Ind. 1990). "It is soundly within the discretion of the trial court to determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard." *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 202 (Ind. 2012). An abuse of discretion occurs "when the trial court's decision is against the logic and effect of the facts and circumstances before it." *Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999), *trans. denied*. In reviewing a contempt finding, we neither reweigh the evidence nor judge the credibility of witnesses. *Mitchell v. Mitchell*, 785 N.E.2d 1194, 1198 (Ind. Ct. App. 2003). Moreover, "[i]n cases of direct contempt, we accept as true the statement entered of record by the trial court. However, we examine the record to

determine whether the acts recorded do, in fact, constitute contempt." *Hopping v. State*, 637 N.E.2d 1294, 1295 n.1 (Ind. 1994) (citation omitted).

[9] The trial court found that Grimes had engaged in direct criminal contempt, a category of contempt that "involves actions occurring near the court, interfering with the business of the court, of which the judge has personal knowledge." *Id.* at 1296. Although the Indiana Code contains statutes pertaining to direct criminal contempt, *see, e.g.*, Ind. Code § 34-47-2-1, our supreme court has explained that "[t]he power of Indiana courts to summarily punish for direct criminal contempt, while specified by statute, rests upon the common law" and "is inherent in the courts," *Hopping*, 637 N.E.2d at 1296. Ultimately,

> [c]ontempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity. *Any* act related to a current or pending proceeding which tends to deter the court from the performance of its duties may support a contempt proceeding. *Any* act which manifests a disrespect and defiance of a court may constitute direct criminal contempt.

*Id.* at 1297.

[10] At the damages hearing, Grimes engaged in repetitive questioning. After being told that a question had been asked and answered—which it had been, twice before—Grimes refused to accept the court's ruling and immediately thereafter asked the same question again. Later, Grimes did not return to his microphone when asked. He continued to argue despite repeated instructions to sit down.

Grimes also interrupted Brown, telling her there was no question before her when Brown had just been given permission to continue with redirect.

[11]    Grimes disputes that his conduct rose to the level of direct criminal contempt. In so arguing, Grimes suggests that his conduct was excusable because the trial court should have granted the oral motion to disqualify. Yet, the instant matter is not an appeal from the denial of that motion—and it is well-settled that "[t]he wrong of the judge, if any, cannot justify the misconduct of counsel." *Dodge v. State*, 140 Ind. 284, 39 N.E. 745, 746 (1895). Grimes also defends his conduct as "legitimate advocacy," Br. of Appellant at 15, and asserts that his actions were permissible due to the informal nature of small claims hearings. At one point, Grimes appears to blame the courtroom's technological shortcomings for his refusal to return to his microphone. Grimes also contests the trial court's suggestion that he had violated the Indiana Rules of Professional Conduct.

[12]    Yet, irrespective of the configuration of the courtroom or Grimes's professional responsibilities, the record indicates that Grimes was disrespectful and defiant at times, in ways that interfered with the progress of the damages hearing. We therefore cannot say that the contempt finding was contrary to the logic and effect of the circumstances before the trial court.[1]

---

[1] In his Statement of Case, Grimes briefly draws our attention to a $128 appeal-preparation fee charged by the court reporter that Grimes asserts was unauthorized by local rules. Grimes does not mention this fee again until his Conclusion, in which he seeks a refund. Grimes has waived any challenge to this fee by failing to support his argument with cogent reasoning in his Argument section. *See* Ind. Appellate Rule 46(A)(8)(a); *Reed v. Reid*, 980 N.E.2d 277, 296-97 (Ind. 2012).

[13] Affirmed.

Mathias, J., and Bradford, J., concur.