## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 08 2020, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jerry Morgan, III,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 8, 2020

Court of Appeals Case No.
20A-CR-864

Appeal from the Madison Circuit
Court

The Honorable Mark Dudley,
Judge

Trial Court Cause No.
48C06-2003-MC-678

**Tavitas, Judge.**

# Case Summary

[1] Jerry Morgan III appeals the trial court's finding that Morgan was in direct contempt. We affirm.

# Issue

[2] Morgan raises two issues which we consolidate and restate as whether the trial court abused its discretion by finding Morgan in direct contempt.[1]

# Facts

[3] On March 13, 2020, the trial court commenced a hearing on Morgan's two pending criminal matters. Morgan, who was seated in the jury box, immediately interrupted the hearing by making comments. The transcript reflects that the deputy prosecutor asked for a bench conference. Morgan, who moved to the defense table, then made another comment. The transcript indicates that Morgan said, "(indiscernible) selling dope from the street (indiscernible)." Tr. Vol. I p. 4. The trial court exhorted counsel to "not look at [Morgan]. That's what he wants." *Id.*

[4] At the ensuing bench conference, the deputy prosecutor alleged that Morgan had just threatened a police officer, Detective Norman Rayford with the Anderson Police Department. The deputy prosecutor stated: "Well [Morgan]

---

[1] To the extent that Morgan makes an argument on the basis of the First Amendment to the United States Constitution, the argument is waived for failing to be cogent. *See* Ind. Appellate Rule 46(A)(8)(a).

just threatened him in open court . . . Said I'm gonna get you . . . [t]o Norman Rayford. It's a Level 6 felony." *Id.* The trial court replied, "I didn't hear it," and played back the recording of the proceeding to determine if Morgan had indeed issued a threat to the Detective. *Id.* at 5. The judge concluded, "Unfortunately it didn't pick up anything from the jury box. Didn't pick him up. (indiscernible) [A]nd I can make out some of the words, but it's not clear." *Id.* at 5-6. The trial court indicated that the recording did partially record the second comment.

[5] Detective Rayford subsequently took the stand and testified, with respect to Morgan's first comment, that, "I began to hear mumbling, which drew my attention toward [Morgan's] . . . direction. . . . [H]e looked in my eyes and told me that he was gonna get me." *Id.* at 9. The deputy prosecutor asked Detective Rayford: "When somebody like that says 'I'm gonna get you,' what do you take that to mean?" *Id.* at 10. Detective Rayford replied: "Threatening physical assault." *Id.* With respect to Morgan's second comment, Detective Rayford testified: "Once he got to the ground floor, he informed that I need to worry about my brothers. . . . [H]e did inform that he was going to get the State on me." *Id.* The following colloquy ensued:

> Q: And, [ ] what did you take that [ ] threat to be about the State? What does that mean?
>
> A: . . . [K]nowing Mr. Morgan the majority of my forty-four (44) years of life, I know him pretty well and I figured he probably was talkin' about [ ] having the State Police investigate me or the FBI.

Q: And, would you also take that to be a threat?

A: I do, sir.

*Id.* at 11.

[6]     The focus of the hearing then turned to the particulars of Morgan's pending criminal charges. Morgan took the stand, and the trial court explained:

> . . . I was aware [Morgan] made a comment to someone. I attempted to listen to the court recording, and couldn't make out his comment from the jury box. . . . [A]nd we've had testimony from Detective Rayford as to what that comment was. . . . [S]ubsequent to the comment from the jury box, [ ] Mr. Morgan then made another comment to Detective Rayford from the defense table. I could make [sic] some of the words, and some of the words actually are the same as what Detective Rayford testified to here [ ] after the State started putting on its evidence as to its motion. And so, [ ] specifically what the court finds is that Mr. Morgan in both the comment from the jury box as well as from the defense table [ ] threaten[ed] Detective Rayford with bodily harm. [ ] [I]t happened here in court in front of myself and other members of the public. [ ] [I]t was in violation of the law to do so, threatening a police officer, which is a violation of the law. Pretty simple. [ ] [T]hat disturbs the orderly progression of court proceedings. We've had to take additional time. We've had to take additional evidence just to deal with this one issue. [ ] [T]hat disrupts all the other people that are here to get their cases resolved.

*Id.* at 31-32. Morgan was subsequently afforded the opportunity to explain his behavior—an opportunity which he did not utilize. The trial court then held Morgan in direct contempt and later issued the following written order:

Defendant made bodily threats to the lead detective in his case, Norman Rayford. Detective Rayford was present in court and heard the defendant's threats. Defendant's statements constitute an attempt to intimidate a witness, and may constitute a new crime. Defendant's proceedings were interrupted due to his statements. The court granted defendant an opportunity to explain his conduct. The defendant exercised his 5th Amendment right against self-incrimination. The court finds the defendant in direct contempt.

Appellant's App. Vol. II p. 4. Morgan now appeals.

## Analysis

[7] Morgan appeals the trial court's order finding him in direct contempt. Morgan denies that his conduct amounted to direct contempt and argues that the contempt finding constituted an abuse of discretion. "A court's contempt power enables it to impose sanctions designed to 'maintain[ ] its dignity, secur[e] obedience to its process and rules, rebuk[e] interference with the conduct of business, and punish[ ] unseemly behavior.'" *Hunter v. State*, 102 N.E.3d 326, 329 (Ind. Ct. App. 2018) (quoting *City of Gary v. Major*, 822 N.E.2d 165, 169 (Ind. 2005)). "It is soundly within the discretion of the trial court to determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard." *Reynolds v. Reynolds*, 64 N.E.3d 829, 832 (Ind. 2016) (quoting *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016)). "'We will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding.'" *Id*. "When reviewing a finding of contempt, we accept as true the statement entered by the trial court and will

interfere with the judgment only where it clearly appears the acts do not constitute contemptuous acts." *Warr v. State*, 877 N.E.2d 817, 824 (Ind. Ct. App. 2007) (citing *Davidson v. State*, 836 N.E.2d 1018, 1020 (Ind. Ct. App. 2005)), *trans. denied*.

[8]     Indiana Code Chapter 34-47-2 defines direct contempt.[2]  Both Indiana Code Section 34-47-2-1 and Indiana Code Section 34-47-2-3 are relevant here. Indiana Code Section 34-47-2-1 provides:

> (a) Every person who disturbs the business and proceedings of a court:
>
>> (1) by creating any noise or confusion;
>>
>> (2) in a court of record; and
>>
>> (3) while the court is open for and engaged in the transaction of business;
>
> is considered guilty of a direct contempt of court.
>
> (b) This section applies to a disturbance caused:

---

[2] Our Supreme Court has held that "judicial power to punish for contempt is inherent and 'essential to the existence and functioning of our judicial system,' and legislature 'has no power to take away or materially impair it' but 'may regulate the exercise of the inherent contempt power by prescribing rules of practice and procedure[.]'" *In re A.S.*, 9 N.E.3d 129, 132 (Ind. 2014) (quoting *LaGrange v. State*, 238 Ind. 689, 692-93, 153 N.E.2d 593, 595 (1958)).  Accordingly, "under the inherent power theory, the above statutory definitions of contempt are not so all-inclusive as to exclude other acts or conduct which may constitute contempt." *LaGrange*, 238 Ind. at 694, 153 N.E.2d at 596.

(1) by the commission of a felony, a misdemeanor, or an
    other unlawful act;

(2) by talking, moving about, or by signs, or gestures; or

(3) in any other manner.

Ind. Code § 34-47-2-1.

[9] Indiana Code Section 34-47-2-3 provides:

A person:

(1) who:

(A) offers, gives, or promises any reward to;

(B) threatens to assault or injure;

(C) assaults or beats; or

(D) in any other manner influences, intimidates, or
    attempts to influence;

any witness to give or abstain from giving testimony in any case,
or to abstain from attending as a witness in any case;

(2) who does any act to put a witness in fear, on account of
    any testimony that the witness may have given; or

(3) who, on account of any testimony, injures or threatens
    to injure a witness;

is guilty of a direct contempt of the court in which the witness may be called to testify, if the acts are done in the presence of the court.

Ind. Code § 34-47-2-3.

[10] Morgan first argues that remand is required because the trial court lacked personal knowledge of his actions, meaning that his actions amounted to indirect contempt, not direct contempt.[3] Morgan contends that the trial court was required to have personal knowledge of the contents of his alleged threats to the police officer. Our Supreme Court has held that "[d]irect contempt includes those 'actions occurring near the court, interfering with the business of the court, of which the judge has *personal knowledge*.'" *In re Nasser*, 644 N.E.2d 93, 95 (Ind. 1994) (quoting *Hopping v. State*, 637 N.E.2d 1294, 1296 (Ind. 1994), *cert. denied*) (emphasis added).

[11] Morgan contends that the personal knowledge requirement should be construed strictly so as to require that the judge hear the specific words of the disruptive comments directly, and to be personally aware of their content.[4] It is enough

---

[3] Contempt can be either direct or indirect. Indirect contempt "involves those acts 'committed outside the presence of the court which nevertheless tend to interrupt, obstruct, embarrass or prevent the due administration of justice." *Reynolds*, 64 N.E.3d at 832 (citing *A.S.*, 9 N.E.3d at 132). We note the practical difference that, while direct contempt findings may be entered summarily without formal charges or an evidentiary hearing, due process protections lie for findings of indirect contempt. *See* Ind. Code § 34-47-3-5; Ind. Code § 34-47-3-6 (entitling indirect contempt defendants to a hearing on a rule to show cause).

[4] We note that the "personal knowledge" language did not generally appear in Indiana's contempt jurisprudence until the *Hopping* decision in 1994. 637 N.E.2d at 1296. Prior to 1994, the preferred language for describing direct contempt was some variant of "*in the presence of* or so near to the court as to interrupt the proceedings of the court." *Whittem v. State*, 36 Ind. 196, 212 (Ind. 1871) (emphasis added); *see also Snyder v.*

that the judge was personally aware that a comment or threat has been made and that the comment or threat has disrupted the ordinary proceedings of the court. "*Any* act related to a current or pending proceeding which tends to deter the court from the performance of its duties may support a contempt proceeding. *Any* act which manifests a disrespect and defiance of a court may constitute direct criminal contempt." *Hopping,* 637 N.E.2d at 1297 (citing *Brumbaugh v. State* 491 N.E.2d 983, 984 (Ind. 1986)) (emphasis in original).

[12] There is no reasonable dispute as to whether the trial court judge had personal knowledge that the proceedings were being disrupted; he did. That the judge may not have understood the precise words used to cause the disturbance is of no moment. Whatever the content of Morgan's remarks, they interfered with the business of the court, and were thus rightly punishable as "unseemly." *Hunter*, 102 N.E.3d at 329 (quoting *City of Gary*, 822 N.E.2d at 169).

[13] Morgan next argues that the evidence is insufficient to show that his actions disrupted the proceedings or amounted to threats. We will only overturn a finding of direct contempt, however, when "there is *no* evidence or inference

---

*State,* 151 Ind. 553, 52 N.E. 152, 152 (1898) ("A direct contempt is an act committed in the presence of the court, or so near to it as to interrupt or disturb the proceedings thereof."). We do not read our Supreme Court's selection of the "personal knowledge" language in *Hopping* as a decision to uproot more than a century of consistent contempt jurisprudence. In distinguishing between direct and indirect contempt, the core of the inquiry is, and always has been, whether the contemptuous acts occur so near the court as to disturb its proceedings or undermine the judicial process. The "personal knowledge" language must not be misunderstood—as it is by Morgan—to necessitate that a trial judge know every particular or detail comprising the disturbance. Rather, it should properly be seen as an analogue for the true locus of the analysis: proximity of the contemptuous acts resulting in an interruption of the business conducted by the court.

therefrom to support the finding." *Reynolds*, 64 N.E.3d at 832 (quoting *Steele-Giri*, 51 N.E.3d at 124) (emphasis added). Morgan's comments occurred in the courtroom, during the regular proceedings of the court, and immediately disturbed those proceedings. Morgan's comments necessitated bench conferences, testimony from witnesses, and extensive commentary from the judge.[5] As the judge aptly observed, Morgan's actions "disturb[ed] the orderly progression of court proceedings. We've had to take additional time. We've had to take additional evidence just to deal with this one issue. [ ] [T]hat disrupts all the other people that are here to get their cases resolved." Tr. Vol. I pp. 31-32. There is certainly both evidence and inference to support a finding of direct contempt under Indiana Code Section 34-47-2-1; accordingly, we need not address whether Morgan's action constituted direct contempt under Indiana Code Section 34-47-2-3. Morgan's actions clearly disrupted the court proceedings and constituted direct contempt.

## Conclusion

[14] The trial court's finding that Morgan was in direct contempt of court was not an abuse of discretion. We affirm.

[15] Affirmed.

Kirsch, J., and Pyle, J., concur.

---

[5] Of the thirty-one pages of transcript from the hearing devoted to actual court activity, nearly thirteen are taken up by activities that would not have occurred but for Morgan's disturbance.